# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ALISTAIR MACK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 5756 |
| | ) | |
| v. | ) | Magistrate Judge Cole |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Alistair Mack, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying his application for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 423(d)(2), and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). 42 U.S.C. § 1382c(a)(3)(A). Mr. Mack asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision. For the reason stated below, Mr. Mack's motion is granted and this matter is remanded to the Commissioner.

### I.

### BACKGROUND

#### A.

#### Mr. Mack's Impairments

As this case presents only legal issues regarding the ALJ's decision, we will dispense with the usual recounting of the medical evidence. Suffice it to say that Mr. Mack suffers from the effects of HIV/AIDS, hypertension, and depression. He also has a history of substance abuse. (R. 22). As

a result, he experiences migraine headaches and diarrhea on a daily basis. (R. 42-43, 46-47). Neuropathy causes him to lose feeling in his legs and feet, mainly on his right side. (R. 43). His legs go out when he walks, especially up stairs. (R. 44). He suffers from fatigue that adversely affects his memory and concentration. (R. 45-46). He gets dizzy. (R. 46). He uses a cane to maintain his balance. (R. 48). He is being treated for depression but the medication he was given increased his numbness. (R. 52-53).

## B.

### ALJ's Decision

The ALJ found that Mr. Mack suffered from the following severe impairments: "[a] history of HIV positive; hypertension; depression; a history of substance abuse; a history of migraine headaches; and a history of peripheral neuropathy." (R. 22). He further found that Mr. Mack did not have an impairment or combination of impairments that met or equaled a listed impairment. (R. 22-23). Specifically, the ALJ found that his mental impairments did not meet listings 12.04 and 12.09 because he had only mild restrictions in his daily activities, mild restrictions in his social functioning, moderate restrictions in his concentration, persistence, or pace, and no episodes of decompensation. (R. 23).

The ALJ then determined that Mr. Mack retained the capacity to perform sedentary work that was further limited to simple, unskilled work. (R.23). The ALJ went on to discuss the medical evidence. There was not a great deal of evidence documenting any physical limitations. Generally, examinations revealed normal strength and range of motion and no abnormal neurological findings. (R. 24-25). Mr. Mack could ambulate without a cane. (R. 25). A consultative examining physician opined that he could perform light work. (R. 25). As for Mr. Mack's mental status, his treatment

center rated his depression as a mild to moderate impairment. (R. 26). A consulting psychologist who evaluated Mr. Mack felt he was moderately limited in his ability to make judgments in or out of a work setting, and moderately limited in his ability to understand and remember complex instructions. (R. 26). The ALJ then formulaically concluded that Mr. Mack's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Mr. Mack's allegation] concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 26-27).

The ALJ then determined that Mr. Mack could no longer perform his past work as a stocker, cook/maintenance worker, or auto mechanic because those jobs were more demanding than sedentary work. (R. 27). The ALJ then considered Mr. Mack's age – 36 – high school education, and work experience and applied the Medical Vocational Guidelines, to find Mr. Mack not disabled under the Act. The ALJ explained that if Mr. Mack had only exertional limitations, the Guidelines would direct a conclusion of "not disabled." The additional non-exertional limitation to simple, unskilled work, according to the ALJ, had little or no effect on the occupational base of unskilled sedentary work. (R. 27). As a result, there were other jobs that Mr. Mack could perform and he was not entitled to disability benefits. (R. 27-28).

## II.

### DISCUSSION

#### A.

#### The Standard of Review

The applicable standard of review of the Commissioner's decision is a familiar one. The

court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the ALJ. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Berger*, 516 F.3d at 544. Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, (7th Cir. 2008); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

While the standard of review is deferential, the court cannot act as a mere "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). An ALJ is required to "minimally articulate" the reasons for his decision. *Berger*, 516 F.3d at 544; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Although the ALJ need not address every piece of evidence, the ALJ cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ's decision must allow the court to assess the validity of his findings and afford the claimant a meaningful judicial review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). The Seventh Circuit calls this building a "logical bridge" between the evidence and the ALJ's conclusion. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). It has also called this requirement a "lax" one. *Berger*, 516 F.3d at 544. *See also* the discussion in *Busking v. Colvin*, 2014 WL 4401380, 18 (N.D.Ill. 2014).

## B.

## Five-Step Sequential Analysis

The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

1) is the plaintiff currently unemployed;

2) does the plaintiff have a severe impairment;

3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

4) is the plaintiff unable to perform his past relevant work; and

5) is the plaintiff unable to perform any other work in the national economy?

20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. §416.920; *Briscoe*, 425 F.3d at 352; *Stein v. Sullivan,* 892 F.2d 43, 44 (7th Cir. 1990). A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. §404.1520; *Stein*, 892 F.2d at 44. The claimant bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. *Briscoe*, 425 F.3d at 352, *Brewer v. Chater,* 103 F.3d 1384, 1391 (7th Cir. 1997).

## C.

## Analysis

There are two problems – which happen to be recurring issues – with the ALJ's decision that necessitate a remand. The first is that the ALJ based his adverse credibility determination solely on

5

the medical evidence. The second is that the ALJ failed to account for his finding that Mr. Mack had a moderate restriction in concentration, persistence, or pace in his residual functional ("RFC") capacity determination.

**1.**

In assessing Mr. Mack's credibility, the ALJ improperly (and inexplicably) employed the familiar boilerplate, or template, that the Seventh Circuit has bemoaned time and again: "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 26-27). The Seventh Circuit has repeatedly criticized this as cart-before-the-horse phrasing. *Moore v. Colvin*. 743 F.3d 1118, 1122 (7th Cir. 2014)("We have repeatedly condemned the use of that boilerplate language because it fails to link the conclusory statements made with objective evidence in the record."); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir.2012)("It puts the cart before the horse, in the sense that the determination of capacity must be based on the evidence, including the claimant's testimony, rather than forcing the testimony into a foregone conclusion."); *Bjornson v. Astrue*, 671 F.3d 640, 644-46 (7th Cir.2012)("The Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'"); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)("It is not only boilerplate; it is meaningless boilerplate.").

Nonetheless, the phrasing continues to appear in ALJ's decisions. It seems to have no purpose. In at least one case before the Seventh Circuit, the Commissioner defended it as "an indispensable aid to the Social Security Administration's overworked administrative law judges."

But not even the Commissioner's lawyers know what the boilerplate or template means. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). Its continued and constant use by the ALJs in this district is inexplicable. However, equally inexplicable and indefensible is the continual resort in plaintiff's briefs to the boilerplate as a basis for reversal, notwithstanding the Seventh Circuit's consistent holdings that an ALJ's use of the boilerplate is not, standing alone, reversible error. The question is whether the ALJ's opinion contains reasons for finding the claimant not credible beyond the formulaic incantation that the Seventh Circuit has found insufficient.

In almost every case in which the ALJ resorts to the boilerplate, there is a follow up explanation that renders the boilerplate harmless, and thus, not a basis upon which to remand the case. *See, e.g., Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014); *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013); *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir.2013); *Filus*, 694 F.3d at 868. Social Security lawyers tend to ignore this line of cases altogether, however, and wedge their boilerplate arguments in where they don't belong.

In this case, however, the boilerplate argument is a better fit than usual. Although Mr. Mack contends that the ALJ offered no reasoning for his adverse credibility determination, the ALJ did, although not explicitly. The recitation of the medical evidence prior to the boilerplate makes it clear that the ALJ rejected Mr. Mack's allegations because they were not supported by that medical evidence. The ALJ discussed nothing else: not Mr. Mack's daily activities[1], not his demeanor at the

---

[1] The ALJ did not question Mr. Mack about his daily activities at the hearing. Mr. Mack did fill out a daily activities questionnaire, however, in which he described rather limited daily activities. He slept or reclined nearly all day, rising only to have meals. (R. 165). He did not change clothes, bathe, or shave regularly. (R. 166). He was able to prepare simple meals like a sandwich or eggs. (R. 166). He was unable to do any chores other than laundry. (R. 167). He could drive a car, shop, and handle money. (R. 168). He did not socialize with others and did not go out. (R. 169).

hearing. The ALJ noted no inconsistencies in Mr. Mack's testimony that might detract from his believability. The sole reason the ALJ supplied for his rejection of Mr. Mack's testimony was the medical evidence. And that is a problem in the Seventh Circuit.

While the Seventh Circuit has ruled time and again that a claimant's credibility may be undermined by the objective medical evidence, *see, e.g., Pepper,* 712 F.3d at 368; *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005), the court has also ruled that an ALJ may not disregard a claimant's complaints of pain simply because they are belied by the objective medical evidence. *See, e.g., Moore,* 743 F.3d at 1125; *Pierce*, 739 F.3d at 1050; *Bjornson*, 671 F.3d at 646, 648; *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). Perhaps these rulings might be harmonized by taking the court to mean that the ALJ can point to the medical record as undermining a claimant's testimony only when the ALJ provides additional reasons for doubting it. *See Pierce*, 739 F.3d at 1050(". . . an ALJ may not base a decision *solely* on the lack of objective corroboration of complaints of pain."(emphasis supplied)). Still, the court has seemingly upheld credibility determinations based solely on the objective medical evidence on a number of occasions. *See, e.g., Outlaw v. Astrue,* 412 Fed.Appx. 894, 896 (7th Cir. 2011); *Getch*, 539 F.3d at 483; *Adkins v. Astrue*, 226 Fed.Appx. 600, 606 (7th Cir. 2007); *Sienkiewicz*, 409 F.3d at 804. Nevertheless, given recent holdings in cases like *Pierce* and *Moore*, we are constrained to remand this case to the Commissioner due to an inadequate rationale for the ALJ's credibility determination.

**2.**

While that is enough to remand this case, it is worthwhile to discuss the other problem with the ALJ's decision. It's a recurring issue as well, and it might be called the "concentration,

8

persistence, or pace issue" – or perhaps in more wieldy fashion, the "CPP issue." As noted above, the ALJ determined that Mr. Mack suffered a moderate restriction of his concentration, persistence, or pace. (R. 23). But the ALJ did not mention this in his residual functional capacity determination, opting instead to limit Mr. Mack to "simple, unskilled work." (R. 23). The question is whether "simple, unskilled work" accounts for a moderate limitation in CPP.

The CPP issue most often comes up in the context of the ALJ's hypothetical to a vocational expert testifying at the administrative hearing. There was no vocational expert employed in this case, but the hypothetical and the ALJ's RFC determination are two sides of the same coin, so the same concerns apply. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). The ALJ's RFC or hypothetical must include all of a claimant's limitations, including deficiencies of concentration, persistence and pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Stewart*, 561 F.3d at 684. The Court of Appeals has "suggested" that the most effective way to do that is to include such limitations specifically in the hypothetical, but has stopped short of "insist[ing], however, on a *per se* requirement that this specific terminology ("concentration, persistence and pace") be used in the hypothetical in all cases." 627 F.3d at 619. And so, many ALJs – like the ALJ in this case – have gone on the way they always have, failing to take advantage of sage advice from the court in *O'Connor-Spinner*.

And so, with ALJs refusing to take the sure path, the question invariably becomes how far the Seventh Circuit might let them wander. The Seventh's Circuit's line is a hazy one. At one point the court acknowledged that its conflicting rulings had left the law in a state of uncertainty. *Kusilek v. Barnhart*, 175 Fed.Appx. 68, 71 (7th Cir. 2006). Since then, cases have continued to go in a variety of directions, and as the court noted in *O'Connor-Spinner,* have been highly fact-intensive

9

and difficult to parse. 627 F.3d at 619.

In *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir . 2008), the court held that a limitation to "simple, unskilled work" did not account for a moderate limitation in CPP. 539 F.3d at 677-78. Still, the court has allowed that there might be limited occasions where an ALJ's RFC will pass muster even where it does not specifically account for deficiencies in CPP. In *O'Connor-Spinner*, the court, in the midst of negotiating its way through its previous rulings on the CPP issue, said:

> We also have let stand an ALJ's hypothetical omitting the terms "concentration, persistence and pace" when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform. We most often have done so when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work.

627 F.3d at 619. This is not a case involving stress- or panic-related limitations, however. Moreover, and more importantly, it is not "manifest" that "simple, unskilled work" specifically excludes jobs that someone with moderate difficulties in concentration, persistence, or pace would be unable to perform.

A simple, unskilled job may, nevertheless, exceed the limits of someone's concentration. *See Kasarsky*, 335 F.3d at 544(". . . the length of time it takes someone with borderline intelligence to learn a job is not the same as the ability of that person to perform consistently once trained."); SSR 85–15, 1985 WL 56857 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

It's easy to imagine an unskilled job that involves a conveyor delivering a product to a worker who must then place it in a receptacle – product after product, receptacle after receptacle, over and over, at a pace. Many unskilled, simple jobs are made up of precisely this type of tedium. Those of a certain age (or a fondness for vintage TV shows) might recall the classic I Love Lucy sketch in which Lucille Ball and Vivian Vance were tasked with wrapping candies coming down a conveyor at a candy factory. *See* http://www.youtube.com/watch?v=8NPzLBSBzPI. The job is simple; it is unskilled. But for one whose concentration waxes and wanes, or cannot persist or maintain a pace throughout the day, it is a daunting if not impossible occupation.[2] This is why a limitation to unskilled, simple work does not necessarily account for a moderate limitation in CPP. And it is a second reason why this matter must be remanded to the Commissioner.

**CONCLUSION**

The plaintiff's motion for remand [Dkt. #14] is GRANTED, and the Commissioner's motion for summary judgment [Dkt. #19] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 11/4/14

---

[2] Of course, the example is not perfect because in the episode the conveyor began to speed up slowly at first and then achieved such a rapid speed that Lucy and Ethel were overwhelmed. But the example is not without some value.